IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

v.

OWEN ROBERSON,

Defendant.

OPINION and ORDER

25-cr-133-jdp

Defendant Owen Roberson is charged with two counts of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). Dkt. 2. Roberson moves to dismiss the indictment, contending that § 922(g)(1) violates his rights under the Second Amendment. Dkt. 22.

The Seventh Circuit recently held that § 922(g)(1) is constitutional as applied to an individual convicted of a felony drug trafficking offense. *United States v. Watson*, 171 F.4th 1012 (7th Cir. 2026). The court of appeals reasoned that "dangerous felons," such as those convicted of drug trafficking offenses, "pose a risk to society and may be disarmed consistent with the Second Amendment." *Id.* at 1023–24. The court of appeals left open whether a defendant's entire criminal history, not just his prior felony convictions, is relevant to determine dangerousness. *Id.* at 1024 n.8.

Roberson's motion presents the question left open by the court of appeals in *Watson*. Roberson has a single non-violent felony conviction for misappropriating someone else's identification. *See State of Wisconsin v. Roberson*, Dane County Case No. 2025-CF-199. He also has misdemeanor convictions for carrying a concealed weapon and discharging a firearm near a building. *See State of Wisconsin v. Roberson*, Dane County Case No. 2025-CF-375. Roberson

contends that § 922(g)(1) is unconstitutional as applied to him because his predicate felony offense is non-violent and his non-felony offenses are not relevant to the analysis. Roberson also contends that the indictment is deficient in light of *Watson* and that § 922(g)(1) is unconstitutionally vague as applied to him.

The court concludes that Roberson's entire criminal history is relevant to whether his disarmament is consistent with the Second Amendment. He has misdemeanor convictions that show that he is dangerous, so his disarmament is constitutional under *Watson*.[1] As for his other arguments, Roberson's indictment adequately alleges the required elements of the offense, and § 922(g)(1) provides fair notice of criminal liability as applied to Roberson. The court will deny the motion to dismiss.

## ANALYSIS

Roberson contends that the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), and the Seventh Circuit's recent decision in *Watson*, 171 F.4th 1012, compel the dismissal of the indictment. Roberson's primary argument is that he is not a dangerous felon, so he cannot be constitutionally disarmed under the Second Amendment as interpreted by *Bruen* and *Watson*. Alternatively, he contends that the indictment is inadequate and that *Bruen* and *Watson* rendered § 922(g)(1) unconstitutionally vague as applied to him.

[1] The government asks the court to find that all felons are dangerous, so § 922(g)(1) is constitutional in all its applications, with no need for an individualized assessment. *Watson* left that question open, 171 F.4th at 1024–25, and this court does not need to decide it either.

### *A. Bruen* and *Watson*

The Second Amendment states that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Second Amendment confers an individual right to possess and carry firearms, but that right is not unlimited. *District of Columbia v. Heller*, 554 U.S. 570, 592, 626 (2008). In *Bruen*, the Supreme Court established a two-part test to determine whether a firearm law infringes Second Amendment rights. 597 U.S. 1. The first part of the test asks whether the regulated conduct is covered by the plain text of the Second Amendment. *Id.* at 17. If it is, then the conduct is presumptively constitutional, and the court proceeds to the second part of the test, which asks whether the firearm law is consistent with the nation's "historical tradition of firearm regulation." *Id.*

To survive scrutiny under the historical analysis portion of the *Bruen* test, a firearm law does not need an exact historical "twin," but there must be a historical "analogue" that is comparable to the modern law. *Id.* at 30. Specifically, courts look for similarities in the purpose and operation of the historical and modern laws. *United States v. Hemani*, 146 S. Ct. 1677, 1686 (2026) (citing *Bruen*, 597 U.S. at 29; *United States v. Rahimi*, 602 U.S. 680, 692 (2024)). "The more closely a contemporary law mirrors a well-established historical analogue in purpose and operation, the more likely it is to be upheld. Conversely, the more a modern law diverges from traditional laws in purpose and operation, the less likely it is to survive review." *Id.*

Since *Bruen*, federal courts across the country have been tasked with assessing the constitutionality of prosecutions under the felon-in-possession law, 18 U.S.C. § 922(g)(1). Every court of appeals that has considered the issue, including the Seventh Circuit, has concluded that § 922(g)(1) is constitutional on its face. *United States v. Prince*, 171 F.4th 1009,

1011 (7th Cir. 2026) (collecting cases). But the courts of appeals are divided on as-applied challenges to § 922(g)(1). Some circuits have held that all potential applications of § 922(g)(1) are constitutional, regardless of a particular defendant's criminal history. *United States v. Jackson*, 110 F.4th 1120, 1127 (8th Cir. 2024); *United States v. Hunt*, 123 F.4th 697, 708 (4th Cir. 2024); *United States v. Dubois*, 139 F.4th 887 (11th Cir. 2025); *United States v. Duarte,* 137 F.4th 743, 761 (9th Cir. 2025). Others have dismissed § 922(g)(1) charges on constitutional grounds for some defendants with non-violent felony convictions. *Range v. Att'y Gen. United States*, 124 F.4th 218 (3d Cir. 2024) (food stamp fraud); *United States v. Hembree*, 165 F.4th 909 (5th Cir. 2026) (simple possession of methamphetamine).

In *Watson*, The Seventh Circuit rejected an as-applied challenge to § 922(g)(1) brought by a defendant with a predicate felony conviction for drug trafficking. 171 F.4th 1012. The court of appeals resolved the first step of the *Bruen* test in Watson's favor, concluding that individuals convicted of felonies are part of "the people" whose right to bear arms is protected by the plain text of the Second Amendment. *Id.* at 1017–18. But at the second step, the court ruled for the government, concluding that the nation's historical tradition of firearm regulation supported disarming individuals who had been convicted of dangerous felonies, including drug trafficking offenses. *Id.* at 1023–24.

To reach this conclusion, the *Watson* court considered two types of historical laws. First, legislatures around the time of the Founding disarmed on a class-wide basis certain groups of people that they viewed as potentially dangerous and particularly likely to misuse firearms, including Catholics, political dissidents, British loyalists, enslaved people, and Native

Americans.[2] *Id.* at 1020–22. Second, at the Founding, a crime was classified as a felony if it was serious enough to be punishable by death, which implies that legislatures could also impose the lesser penalty of disarmament. *Id.* at 1022–23. Taken together, the *Watson* court concluded that these historical traditions "lead us to uphold § 922(g)(1) as applied to dangerous felons based on the recognized power of the states to disarm dangerous felons." *Id.* at 1024.

**B. Evaluating dangerousness**

*Watson* clarified the state of the law in this circuit on the constitutionality of § 922(g)(1), but it left some questions unanswered. As relevant here, the court declined to decide whether "dangerousness" should be evaluated based on a defendant's entire criminal record or based only on the predicate felony offenses. *Id.* n.8. That question has split other circuits. The Fifth Circuit has held that only predicate felonies are relevant, because that is the basis for categorical disarmament under the statute. *United States v. Kimble*, 142 F.4th 308, 318 (5th Cir. 2025). The Third and Sixth Circuits have held that a defendant's entire criminal record is relevant, because the historical tradition does not limit the evaluation of dangerousness to the particular felonies listed in the indictment or plea agreement. *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024); *Pitsilides v. Barr*, 128 F.4th 203, 211 (3d Cir. 2025). In this case, the government asks the court to adopt the Third and Sixth Circuit approach. Roberson advocates for the Fifth Circuit approach.

[2] The court of appeals recognized that most of these laws are "repugnant by today's standards" and would certainly violate the Fourteenth Amendment. *Watson*, 171 F.4th at 1022. But it concluded that for the purpose of the *Bruen* analysis, "their import cannot be ignored. These laws reflect the boundaries of the legislature's power to enact class-wide disarmament laws consistent with the Second Amendment." *Id.*

The court concludes that Roberson's entire criminal record is relevant to whether he is dangerous and can be disarmed consistent with the Second Amendment. The dangerousness standard, which the Seventh Circuit adopted in *Watson*, is based on the historical principle that disarmament is appropriate when an individual "present[s] a special danger of misusing firearms." *Pitsilides*, 128 F.4th at 210 (quoting *Rahimi*, 602 U.S. at 698) (cleaned up). In determining whether an individual falls into that category, nothing in the historical tradition limits the court to certain criteria or requires it to close its eyes to a defendant's broader criminal history. *Id.*

The dissent in *Kanter v. Barr*, which was authored by now-Justice Barrett and which the Seventh Circuit relied on extensively in *Watson*, is persuasive on this point. 919 F.3d 437, 468 (7th Cir. 2019) (Barrett, J., dissenting). *Kanter*, which predates *Bruen*, was an as-applied challenge to § 922(g)(1) brought by a defendant with a single felony conviction for mail fraud. The court rejected the defendant's challenge, holding that the government had a legitimate interest in disarming people convicted of "serious crimes," even if they were non-violent. 919 F.3d at 451. But Justice Barrett disagreed, relying on a historical analysis of Founding-era laws to argue that felons can be disarmed if they are dangerous, but not simply because they are felons. *Id.* at 451–69. Most relevantly, Justice Barrett took a broad view of dangerousness, noting that if an individual's felony conviction is not enough, the government "might still be able to show that [his] history or characteristics make him likely to misuse firearms." *Id.* at 468. The Seventh Circuit in *Watson* effectively adopted Justice Barrett's historical analysis and her proposed dangerousness standard, *see* 171 F.4th at 1019, 1021, 1023, 1024, so the court finds persuasive her view that a defendant's broader "history and characteristics" are relevant to the dangerousness analysis.

That leaves the question whether Roberson's criminal history demonstrates that he presents a special danger of misusing firearms. *See Rahimi*, 602 U.S. at 698. The court has little trouble finding that it does. In 2025, Roberson pleaded guilty to misdemeanor offenses of carrying a concealed weapon, in violation of Wis. Stat. § 941.23(2), and discharging a firearm within 100 yards of a building devoted to human occupancy, Wis. Stat. § 941.20(1)(d). *State of Wisconsin v. Roberson*, Dane County Case No. 2025-CF-375. There is no question that discharging a firearm in a location where someone could get hurt is risky behavior that indicates that someone presents a special danger of misusing firearms.[3]

### C. Other arguments

Roberson makes two other arguments for dismissal, neither of which the court finds persuasive.

First, Roberson argues that the indictment runs afoul of *Rehaif v. United States*, 588 U.S. 225, 227 (2019), because it doesn't allege that he knew he was a felon who could be disarmed under § 922(g)(1). *Rehaif* held that a defendant violates § 922(g) only if he has knowledge of the status that makes it unlawful for him to possess a firearm. *Id.* In the case of § 922(g)(1), the court of appeals has described the knowledge-of-status element as "quite easy to prove," *United States v. Triggs*, 963 F.3d 710, 715 (7th Cir. 2020), noting that a felony conviction is "a life experience unlikely to be forgotten." *United States v. Maez*, 960 F.3d 949, 964 (7th Cir.

[3] In its brief, the government described the conduct underlying these misdemeanor convictions, explaining that Roberson discharged a firearm inside a storeroom at his workplace. *See* Dkt. 29-4 (criminal complaint). The government also noted that Roberson is facing pending state charges related to an incident during which he discharged a firearm inside his residence, with the projectile going into the neighboring unit. Dkt. 29, at 10. Roberson argues that these are unproven allegations and it would not be proper for the court to consider them. The court need not decide that issue, because the elements of Roberson's misdemeanor convictions are enough to establish that he is dangerous.

2020). The court of appeals has upheld indictments charging § 922(g)(1) under *Rehaif* as long as they closely track the statutory language. *Id.* at 965. But Roberson argues that that's no longer sufficient post-*Watson*, because now the government needs to allege not only that the defendant knew he was a convicted felon, but that the defendant knew he was dangerous.

The court sees no *Rehaif* problem with the indictment. As this court recently noted in *United States v. Anderson*, No. 26-cr-27-wmc, at 11 (W.D. Wis. Aug. 6, 2026), the availability of a potential as-applied constitutional challenge does not change the statutory elements of § 922(g)(1). A defendant's dangerousness is relevant to whether the statute can be applied to him consistent with the Second Amendment, but it is not an element that the government has to allege in the indictment or prove beyond a reasonable doubt at trial.

Second, Roberson argues that *Bruen* and *Watson* rendered § 922(g)(1) unconstitutionally vague as applied to him. Under the Fifth Amendment Due Process Clause, a criminal statute must "give ordinary people fair notice of the conduct it punishes." *United States v. Williams*, 106 F.4th 639, 651 (7th Cir. 2024) (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)). In an as-applied challenge, a defendant must show that the statute "is vague as applied to him; and if the statute undoubtedly applies to his conduct, he will not be heard to argue that the statute is vague as to one or more hypothetical scenarios." *United States v. Cook*, 970 F.3d 866, 873 (7th Cir. 2020).

On its face, Section 922(g)(1) gives fair notice of the criminalized conduct: it prohibits the possession of a firearm by an individual who has been convicted of a crime with a punishment of more than one year. But Roberson argues that *Bruen* and *Watson* rendered § 922(g)(1) unconstitutionally vague, because defendants have no way of knowing if they are "dangerous" and therefore prohibited from carrying firearms.

Roberson's vagueness argument fails for the two reasons that this court explained in *Anderson*. No. 26-cr-27-wmc, at 12–13 (W.D. Wis. Aug. 6, 2026). First, it's not clear that a constitutional challenge can render an otherwise clear statute vague. Roberson relies on Justice Scalia's dissent in *Bond v. United States* for that proposition, in which he stated that the majority's interpretation of a criminal statute under the constitutional avoidance canon would contravene due process because it would require an individual "to ponder the totality of the circumstances in order to determine whether his conduct is a felony." 572 U.S. 844, 872–73 (2014) (Scalia, J., dissenting). But the court is not aware of any controlling authority that has adopted Justice Scalia's position. And at least one circuit has rejected that position in the context of a § 922(g)(1) challenge, holding that "the vagueness doctrine requires that the *challenged statute itself* be unconstitutionally vague". *United States v. Landrum*, 168 F.4th 771, 774 (5th Cir. 2026) (emphasis in original).

Second, even accepting Roberson's premise that a constitutional interpretation can render a statute unconstitutionally vague, there is no way that *Bruen* or *Watson* could have done so as applied to Roberson's case. *Bruen* did not concern § 922(g)(1), and *Watson* post-dates Roberson's offense. Neither case could have affected whether Roberson had fair notice that his conduct was criminal. *See Landrum*, 168 F.4th at 774–75.

In sum, the court concludes that Roberson had fair notice that his conduct was criminal, that the indictment was sufficient, and that his criminal history allows him to be disarmed consistent with the Second Amendment. The court will deny the motion to dismiss.

ORDER

IT IS ORDERED that defendant Owen Roberson's renewed motion to dismiss the indictment, Dkt. 25, is DENIED.

Entered August 21, 2026.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge